ARNOLD and others *v.* CHESEBROUGH and others.[1]

(*Circuit Court, E. D. New York.* January 11, 1887.)

1. TRIAL—EXHIBITION OF PAPER TO WITNESS—RIGHT OF OPPONENT TO INSPECT PAPER.
    The exhibition of a paper to a witness on the stand entitles the opposite party to an inspection of the paper.
2. SAME—EXHIBITION OF SIGNATURE.
    But, where only the signature attached to a paper is exhibited to the witness, that fact does not entitle the opposite party to inspect the paper containing the signature.
3. SAME—PRODUCTION OF PAPERS—TEST OF VERACITY OF WITNESS.
    The issue in the case being whether J. C. had been the wife of B. C., deceased, the question was whether certain papers bearing upon the relations of the parties, and in the possession of C. C.. executor of B. C., and defendant herein, should be produced prior to the examination of J. C. *Held* that, the veracity of J. C. being largely involved in this case, she should give her testimony before inspecting the papers, in order to better enable the court to judge of her veracity.
4. EXECUTORS AND ADMINISTRATORS—CLAIM BY ALLEGED WIFE—EXAMINATION OF EXECUTOR TOUCHING ESTATE—PROOF OF MARRIAGE.
    Where the issue is whether a woman was the wife of a person now deceased, the executor of such decedent should not be examined touching decedent's estate until after the decision of the court upon the principal question, viz., the question of marriage.

In Equity.
*George W. Norris,* for complainants.
*Bliss & Schley,* for defendants.

BENEDICT, J.   In this case several questions which have arisen upon the taking of the testimony before an examiner have been presented to me for decision.   The first question is whether the plaintiff can require the defendant Charles A. Chesebrough, when examined as a witness for the plaintiff, to produce certain papers admitted to be in his custody, or in the custody of his counsel for him.   It appears that on a former occasion when one Harran was examined as a witness for the plaintiff in this case, the defendant's counsel exhibited to Harran what purported to be a signature attached to certain papers, and inquired of the witness whether the signature was his.   As to some of the signatures Harran was unable to state; as to others, he said the signature was his.   The papers were thereupon marked for identification by the examiner, and retained by the defendant's counsel.   Upon these facts the plaintiff now claims the right to inspect the papers the signatures of which were so exhibited to Harran.   I have often ruled at *nisi prius* that the exhibition of a paper to a witness on the stand entitles the other side to an inspection of the paper so shown the witness.   This ruling has not proceeded upon the ground that a paper becomes evidence in a cause by the mere proof of its execution, but upon the ground that a party is entitled to be informed as to what transpires between his opponent and a witness while

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

on the stand. The mere exhibition of a paper to a witness on the stand does not make the paper evidence, nor does it entitle the opposite party to a possession of the paper; but such an exhibition does, in my opinion, entitle the opposite party to see the paper so exhibited. A door for great abuse is opened, as it seems to me, if one party can exhibit to a witness on the stand a paper, and keep the opposite party and the court in ignorance as to what was written on the paper. To prevent an improper communication to a witness while being examined is the reason of the ruling, and the reason seems to me to be sound. But I do not see that the plaintiff, in applying for the production of the papers in question, brings himself within the rule. The papers were not shown the witness, but only what purported to be the signature to the papers, and an inspection of that alone is not what the plaintiff desires. It might be convenient for the plaintiff to have the papers themselves, for the purposes of cross-examination, but that affords no foundation for a right to require their production by the opposite party. As to the papers themselves, I do not see but that the position is the ordinary one where notice to produce is given, and, on failure to produce, parol evidence of the contents admitted.

The second question arises as follows: The issue in the case is whether one Josephine Cregier was the wife of one Blasius Chesebrough, now deceased. The defendant Charles A. Chesebrough, executor of Blasius, has in his possession as executor certain papers,—such as letters of Josephine to Blasius, the alleged husband; letters of Josephine to her mother; and certain hotel bills, apparently paid by Blasius, and tending to show the relation between Blasius and Josephine,—which he is required by a *subpœna duces tecum* to produce. The papers, it is insisted by the counsel for the plaintiff, afford direct evidence in support of the averment in the bill of a marriage between Blasius and Josephine, and may be produced in court by a *subpœna duces tecum*, and may be proved by the defendant as a witness for the plaintiff. The defendant objects to the production of the papers at this time upon the sole ground that the testimony of Josephine has not yet been taken in support of the bill, and that when she is examined the defendant is entitled to have her testimony given without previous inspection of these papers, because in that way her veracity will be the better tested. Counsel for the defendant offers to produce the papers now, if the plaintiff will disclaim an intention to call Josephine as a witness, and also offers to deposit the papers in any way that may be suggested to prevent the possibility of their loss or destruction in the mean time; but he insists, in the interest of justice, that he should be allowed to retain the papers in order to prevent their inspection by the witness Josephine prior to her examination. This is a question addressed to the discretion of the court. Considering the nature of the controversy, it seems to me that if the witness Josephine, whose veracity, it is plain, is largely involved in the controversy, should give her testimony, at least so far as relates to her marriage, without previous inspection of these papers, the court would be the better able to judge of her veracity. Such being my opinion, I decline for the

present to direct the defendant to produce the papers. Any order for their preservation or safe-keeping will be made that may be proper.

The third question relates to the right of the plaintiff at this stage of the case, before any adjudication upon the question of marriage, to go into the examination of Charles A. Chesebrough in regard to his disposition of the proceeds of the estate in question. The defendant objects to any inquiry on the part of the plaintiff at this stage of the case as to the investment of any money of the estate until the determination by the court of the primary question upon which the plaintiff's right to the money depends, viz., the question of marriage between Josephine and Blasius. The question, it will be observed, is not as to perpetuating the testimony of Charles A. Chesebrough, but simply whether, in this stage of the case, prior to any determination of the question of marriage, which lies at the basis of the plaintiff's right to recover, an inquiry can be gone into as to the disposal of the proceeds of the estate by the defendant Charles A. Chesebrough. In my opinion this inquiry is premature; it should be postponed until after the decision of the court upon the principal question, viz., the question of marriage.